### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAROLYN PLUMP,** | : | |
| | : | |
| Plaintiff | : | |
| | : | Civil Action No. |
| v. | : | |
| | : | |
| | : | |
| **LA SALLE UNIVERSITY** | : | Jury Trial Demanded |
| | : | |
| Defendant. | : | |

## COMPLAINT

### I.   INTRODUCTION

1.       This action for equitable, monetary and other relief is brought by Plaintiff, Carolyn Plump, to redress intentional violations by Defendant, La Salle University, of rights secured by the laws of the United States.

### II.   JURISDICTION

2.       This action is brought pursuant to federal statutes Title VII of Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; and the Federal Equal Pay Act, 29 U.S.C. § 206, *et seq.*

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.[1]

---

[1] Plaintiff will move to amend this complaint to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission. Any additional claims under the PHRA will mirror claims set forth in this

4.      Plaintiff Carolyn Plump has exhausted federal administrative remedies. Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2019-00293 on or about October 16, 2018, and dual filed it with the Pennsylvania Human Relations Commission ("PHRC"). On February 6, 2019, Plaintiff filed a second Charge with the EEOC, Charge No. 530-2019-04822, and dual filed it with the PHRC to include additional claims of discrimination. On July 9, 2019, the EEOC issued a Right-to-Sue letter for Charge No. 530-2019-00293 and on July 18, 2019, the EEOC issued a Right-to-Sue letter for Charge No. 530-2019-04822. This suit is timely filed.

## III.    **VENUE**

5.      All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania as the place in which the claims arose and the place where the Defendant, La Salle University, conducts business.

6.      Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## IV.    **PARTIES**

7.      Plaintiff Carolyn Plump (hereinafter "Plaintiff" or "Ms. Plump") is an adult female who currently resides in Bucks County, Pennsylvania.

8.      At all times material hereto, Ms. Plump was and still is an employee of Defendant La Salle University.

---

complaint. This Court has Supplemental Jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367.

9.      Defendant La Salle University (hereinafter "Defendant" or "La Salle") is located in Philadelphia, Pennsylvania, has more than 500 employees, and is an educational institution that receives federal assistance.

## V.     STATEMENT OF FACTS

### A. Background.

10.     Ms. Plump earned her B.A. from Duke University and her J.D. from Boston University and spent 20 years practicing law prior to accepting the position at La Salle.

11.     On June 25, 2012, La Salle offered Ms. Plump an Assistant Professor/Tenure Track position in the School of Business' Management & Leadership Department.

12.     Ms. Plump was offered a base salary of $85,000.

13.     Every year since 2012, Ms. Plump has received a new contract and each contract states that her appointment is in the "Department of Management & Leadership." There is absolutely no reference to her discipline – business law – in the contracts.

14.     The University's School of Business is made up of five departments: (1) Accounting, (2) Business Systems and Analytics, (3) Finance, (4) Management & Leadership ("MGT"), and (5) Marketing.

15.     Presently there are seven full-time faculty members, four women and three men, in the MGT Department.  There are also two male faculty members that hold the status of partial retirement.

16.     The faculty members in the MGT Department have advanced degrees in various disciplines.  E.g., strategic management, industrial and organizational psychology, and law.

17.     Each full-time faculty member at La Salle is appointed one of three ranks: Assistant Professor (most junior rank); Associate Professor; and Full Professor (highest rank).

18.     Apart from rank, some professors are tenured, and some professors are not. You have to apply for promotion in rank and tenure separately.

19.     Upon information and belief, it has been La Salle's customary salary structure that a professor receives a 10% salary increase to her base salary when promoted from Assistant Professor to Associate Professor, and an additional 10% salary increase to her base salary when promoted from Associate Professor to Full Professor.

20.     La Salle gave the faculty a 2% cost-of-living increase for the academic years of 2013-2014 and 2014-2015.

21.     Ms. Plump's base salary for 2014-2015 was $88,434.

22.     In July 2015, it was publicly reported that La Salle had a $12 million-dollar budget shortfall and a significantly declining freshman class. Consequently, there was no cost-of-living increase for the faculty for the 2015-2016 and 2016-2017 academic years.

23.     The faculty received a 2% cost-of-living increase for the second part of the 2017-2018 academic year. As a result, Ms. Plump's base salary increased to $90,203 in the second semester of the 2017-2018 academic year.

24.     In March 2018, Ms. Plump was awarded tenure and promoted to the rank of Associate Professor in the MGT Department.

25.     As a result of her promotion to Associate Professor, Ms. Plump's base salary was increased to $99,223 beginning August 2018. This represented a 10% increase in her base salary.

26.     During a conversation with a male colleague in the MGT Department, Charles Fornaciari, on April 19, 2018, Mr. Fornaciari informed Ms. Plump that he was earning

substantially more than her (i.e., more than 20%). He also informed Ms. Plump that La Salle was willing to negotiate his salary when he was hired.

27.     Mr. Fornaciari was hired as a Full Professor (untenured) in the MGT Department in spring 2015 and began in fall 2015.  That year La Salle had a $12 million-dollar budget shortfall.

28.     On May 1, 2018, Ms. Plump emailed Dean MarySheila McDonald and asked to meet with her to discuss a salary issue.  On May 8, 2018, Ms. Plump met with Dean McDonald and informed Dean McDonald that she believed she was, and continues to be, discriminated against because she is being paid less than her male colleague.

29.     Dean McDonald's initial response to Ms. Plump's allegation was, "How did you learn that?" and she was noticeably upset that Charles Fornaciari had spoken to Ms. Plump about his salary.  Ms. Plump reminded Dean McDonald that salary information is a term and condition of employment and, even in a non-union setting, something employees are free to discuss. Dean McDonald made several other comments during the meeting, including but not limited to, "that is what you agreed to" and "you signed a contract for that amount."

30.     Dean McDonald informed Ms. Plump that she was being paid appropriately according to the Association to Advance Collegiate Schools of Business' (AACSB) salary data.

31.     AACSB is a third-party administrator that maintains a comprehensive database of business school faculty salaries. The database breaks down the salaries by rank (Assistant Professor, Associate Professor, and Full Professor) and by discipline.

32.     During the May 1, 2018, meeting, Dean McDonald offered to share AACSB salary data with Ms. Plump to demonstrate she was being paid appropriately.  When Ms.

Plump followed up with an email to Dean McDonald and asked her for the AACSB data, Dean McDonald declined to provide Ms. Plump with the AACSB data.

33.     Ms. Plump met with Dean McDonald again on May 31, 2018, and during this meeting Dean McDonald reiterated to Ms. Plump that she and Karen Reardon, the other female in the MGT Department whose discipline is also business law, are being appropriately compensated in accordance with the AACSB's salary data for business law professors.

34.     Despite the fact that Ms. Plump was hired as a full-time faculty member in the MGT Department, the University used the classification/discipline of "Business Law" to determine Ms. Plump's and her female colleague's salary on the AACSB salary scale.

35.     In contrast, there are male faculty members in the MGT Department with disciplines other than management, e.g., strategic management and industrial and organizational psychology, but La Salle used the classification/discipline "Management" on the AACSB salary scale to determine their starting salaries and not their specific discipline.

36.     The starting salary for the classification of "Management" on the AACSB salary scale is higher than the classification of "Business Law." Consequently, Ms. Plump's salary is significantly less than her male colleagues in the MGT Department because the University used the classification of "Management" to determine their respective starting salaries.

37.     Full-time faculty members in the MGT Department are required to teach "12 credits per semester" and "devote weekly, during the regular academic year, time equal to at least one-half of your standard teaching load to on-campus student counseling, conferences, and departmental academic development and administrative duties."

38.     Throughout Ms. Plump's tenure she has taught 12 credits each semester.

39.     During Ms. Plump's tenure, she has predominantly taught business management courses.

40.     Ms. Plump has consistently taught MBA 840 and MBA 901.  Both courses are MBA management courses with no mention in the description of either being a law course.

41.     Currently Ms. Plump is teaching three (3) sections of MBA 840 titled: "Socially Responsible Decision Making."

42.     Ms. Plump has also taught MGT 309, a business management undergraduate course.  Ms. Plump developed MGT 309 "Management Perspectives on Globalization" using the same framework used to teach MBA 901 and 840, neither of which are business law classes.

43.     Ms. Plump has repeatedly asked to teach law courses and was told by both Dean Gary Giamartino (the previous Dean for the School of Business) and Dean McDonald (the current Dean for the School of Business) that her responsibility is to teach courses for the management department.

44.     In December 2018, Ms. Plump reached out to John Farrell, the Director of the MBA Part-Time Graduate Studies Program, to discuss adding a business law course to the MBA curriculum.  Mr. Farrell informed Ms. Plump that it's not a priority at this time to include a law course in the MBA curriculum.

45.     In addition to teaching 12 credits, Ms. Plump is solely responsible for overseeing management department internships that student receive course credit for.

46.     During the academic year, Ms. Plump devotes significant time each week to student counseling, conferences, and departmental academic development and administrative duties.

47.    Ms. Plump's current and past MGT Department responsibilities outside the classroom include, but are not limited to:

- Attends open houses to speak with parents and prospective students about the management major.

- Running management experiential exercises for the MGT Department at freshman orientation.

- Serve as a freshman advisor for the MGT Department.

- Review and grade management role-play exercises for MGT courses.

- Co-chaired/chaired the MBA Ethics and Leadership conference for the MGT Department.

- Hold drop-in office hours during registration to advise MGT majors.

- Guest lecturer for the MBA-Swiss program on management issues.

- Writing articles for the MGT blog sponsored by the MGT Department.

- Chaired the search committee for a new MGT faculty position.

- Served as a coach, along with Charles Fornaciari, for the International Business Ethics Case Competition for graduates and undergraduates.

- Invited to co-chair the Mid-Atlantic Organizational Behavior Teaching Conference (several MGT faculty in the department are on the committee, including Charles Fornaciari).

48.    During Ms. Plump's tenure with the University, she has published numerous articles in management journals.  More specifically, 100% of her peer-reviewed journal publications were in MGT journals. One of the journals was the same journal Charles Fornaciari published in as well.

8

49.     Similarly, most of the professional conferences Ms. Plump has participated in have been management conferences.

50.     La Salle requires the faculty members in the MGT Department to have equal skill, effort, and responsibility. All the faculty members perform their jobs under similar working conditions, they are all required to teach the same number of credits each semester, devote time equal to at least one-half standard teaching load to on-campus student counseling, conferences, and departmental academic development and administrative duties, and yet, the female faculty members are paid lower wages than the male faculty members in the MGT Department.

51.     La Salle applies one standard to the female faculty and another to the male faculty in the MGT Department in determining their salaries.

52.     Upon information and belief, La Salle uses the AACSB Management salary standard, regardless of discipline, to determine salaries for the male MGT faculty and the AACSB Business Law salary standard to determine salaries for two female MGT faculty members. Consequently, this results in the male faculty earning significantly more than the female faculty in the MGT Department.

53.     The AACSB database is not a bona fide job-related factor to Ms. Plump's position at La Salle.

54.     In the alternative, if the AACSB is considered a neutral factor in determining salaries, it disparately impacts two most recently hired full-time female faculty members in the MGT Department.

**B. The Male MGT Faculty Members' Starting Salaries Are a Higher Percentage on the AACSB Salary Scale.**

55.     Even if each faculty member's salary in the MGT Department is determined by his/her discipline, in Ms. Plump's case business law, upon information and belief, Ms. Plump is being paid at a lower percentage on the AACSB Salary Scale than her male colleague(s).

56.     AACSB data for Business Law Professors reflects that Ms. Plump's starting salary was approximately within the 25th percentile for newly hired Assistant Professors of Business Law at private accredited universities.

57.     Upon information and belief, the starting salaries La Salle has offered Ms. Plump's male colleagues hired after Ms. Plump in the MGT Department were in a higher percentile on the AACSB salary scale compared to Ms. Plump.  This disparity in percentage on the AACSB salary scale constitutes discrimination.

**C. Most Recent Male Hired in the MGT Department at Higher Salary than Ms. Plump.**

58.     In November 2018, the MGT Department hired Patrick Coyle as an Assistant Professor.  Mr. Coyle is male and has a Ph.D. with a discipline in Industrial/Organizational Behavior.  He started in August 2019 in the MGT Department.

59.     Upon information and belief, La Salle offered Mr. Coyle a higher salary than Ms. Plump's current salary, despite the fact he is of a lower rank (assistant professor) and has significantly less experience.

**D. The University's History of Not Negotiating Salaries with Female Professors.**

60.     At the time Ms. Plump was hired in 2012, she endeavored to negotiate her starting salary. The University refused to negotiate with her. Upon information and belief, the University took the same position when Karen Reardon, Ms. Plump's colleague in the MGT Department, was hired.

61.     In contrast, in 2015 the University negotiated with Mr. Fornaciari over his starting salary despite the financial trouble the University was experiencing at the time.

<u>COUNT I</u>

<b>PLAINTIFF'S CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. § 2000e, <i>et seq.</i></b>

<b>(Disparate Treatment/Unequal Pay)</b>

62.     Ms. Plump incorporates by reference herein the preceding paragraphs of this complaint.

63.     Title VII of the Civil Rights Act of 1964 prohibits discrimination because of or on the basis of sex. 42 U.S.C. § 2000e-2(a).

64.     Defendant engaged in sex discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

65.     Ms. Plump received disparate treatment, including disparate wages, on the basis of her sex.

66.     Ms. Plump complained about the disparate treatment.

67.     The Defendant took no action to correct the discrimination.

68.     Ms. Plump was subjected to discrimination as a direct result of her sex.

69.     Defendant's actions created an intimidating, hostile, offensive environment for Ms. Plump. The discriminatory treatment caused Ms. Plump to suffer emotional distress, mental anguish, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

WHEREFORE, Plaintiff, Carolyn Plump, respectfully requests judgment in her favor and against La Salle University for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT II

### PLAINTIFF'S CLAIMS UNDER TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, *et seq.*

70.     Ms. Plump incorporates by reference herein the preceding paragraphs of this complaint.

71.     Defendant engaged in illegal discrimination against faculty members on the basis of sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

72.     Ms. Plump received disparate treatment, including disparate wages, on the basis of her sex.

73.     Ms. Plump complained about the disparate treatment.

74.     The Defendant took no action to correct the discrimination.

75.     Ms. Plump was subjected to discrimination as a direct result of her sex.

76.     Defendant's actions created an intimidating, hostile, offensive environment for Ms. Plump. The discriminatory treatment caused Ms. Plump to suffer emotional distress, mental anguish, wage loss, loss of self-esteem, personal humiliation, and loss of enjoyment of life.

WHEREFORE, Plaintiff, Carolyn Plump, respectfully requests judgment in her favor and against La Salle University for compensatory and punitive damages, plus costs of this action, reimbursement of back pay with interest, front pay, attorney's fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## COUNT III

### PLAINTIFF'S CLAIMS UNDER THE FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206, *et seq.*

77.     Ms. Plump incorporates by reference herein the preceding paragraphs of this complaint.

78.     Defendant employs Ms. Plump and her fellow male faculty member(s) in positions in the MGT Department that require substantially equal skill, effort and responsibility.

79.     Ms. Plump and her fellow male faculty member(s) perform their jobs under similar working conditions.

80.     Defendant pays Ms. Plump less than the male faculty members in the MGT Department on the basis of her sex in violation of the Federal Equal Pay Act.

WHEREFORE, Plaintiff, Carolyn Plump, respectfully requests judgment in her favor and against La Salle University for reimbursement of back pay with interest, liquidated damages, attorneys' fees, and such other relief as the Court may deem just, proper, and appropriate in the circumstances of this case.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial for all applicable claims raised in this action.

Respectfully submitted,

**HARDWICK BENFER, LLC**

Tiffanie C. Benfer, Esq. (PA #202096)
tbenfer@hardwickbenfer.com
179 N. Broad Street
Doylestown, PA 18901
Telephone: (215) 230-1912
Fax: (215) 230-1913

*Attorney for Plaintiff*

Dated: September 30, 2019